**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jestin Dale Rogers,<br><br>               Plaintiff,<br><br>v.<br><br>United States of America,<br><br>               Defendant. | No. CV-15-08143-PCT-JZB |

Pending before the Court is Defendant's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a). (Doc. 6.) For the reasons below, the Court will grant Defendant's Motion.

## I. Background

Plaintiff, proceeding *pro se*, asserts that on August 17, 2014, Defendant's employee, Sergeant Terry Michael Orazi, returned to his home in Clarksville, Tennessee. (Doc. 1 ¶ 14.) At that time, Sergeant Orazi's home was occupied by two other Army soldiers, Rachel L. Rogers and Sergeant Joshua Gaither, as well as Plaintiff's two young sons. (*Id.* ¶ 15.) Sergeant Orazi had been at the firing range prior to returning home, and he brought a duffle bag filled with firearms into the home. (*Id.* ¶ 17.) At that time, Ms. Rogers and Sergeant Gaither were in the bedroom together in the second level of the home, and Eldin J. Rogers, the son of Plaintiff and Ms. Rogers, was in his bedroom. (*Id.* ¶¶ 18-19.)

Plaintiff alleges that after Sergeant Orazi returned to the home, he and Eldin Rogers interacted for 20-30 minutes, during which Sergeant Orazi allowed Eldin Rogers

to "help him load bullets into firearm magazines." (*Id.* ¶ 22.) Plaintiff claims that Sergeant Orazi then placed a loaded 9mm Glock on the coffee table near where Eldin Rogers was standing. (*Id.* ¶ 24.) Sergeant Orazi turned his back and the gun fired, shooting Eldin Rogers in the chest and destroying his "liver and a kidney." (*Id.* ¶¶ 26-27.) Emergency units were dispatched and Eldin Rogers was taken to Vanderbilt Hospital in Nashville, Tennessee. (*Id.* ¶ 29.) Eldin Rogers was pronounced dead at 7:35 PM on that same day. (*Id.* ¶ 30.)

Plaintiff asserts that Sergeant Orazi was acting within the course and scope of his employment with Defendant at the time of the incident because "he was in direct violation of military regulations living with other military members off base, which constitutes a form of fraternization." (*Id.* ¶ 13.) Plaintiff further alleges that Sergeant Orazi was held in confinement at Fort Campbell immediately after the incident, and Defendant punished Sergeant Orazi, Ms. Rogers, and Sergeant Gaither "at the military level." (*Id.* ¶¶ 31-32.)

On August 12, 2015, Plaintiff, an Arizona resident, filed his Complaint in the District of Arizona asserting claims for negligence and wrongful death against the United States pursuant to the Federal Torts Claims Act, 28 U.S.C. § 2671, *et seq*. (FTCA). (*Id.*) On October 16, 2015, Defendant filed an Answer to the Complaint and a Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a). (Doc. 6.) Plaintiff filed a Response in opposition to the Motion on October 23, 2015. (Doc. 10.) On October 27, 2015, Defendant filed a Reply. (Doc. 11.)

**II. Legal Standard**

Pursuant to 28 U.S.C. § 1404(a), a district court may transfer a civil action to any other district or division where the action might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice[.]" The change of venue statute was enacted to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (citation and internal quotation marks omitted).

"When determining whether a transfer is proper, a court must employ a two-step analysis. A court must first consider the threshold question of whether the case could have been brought in the forum to which the moving party seeks to transfer the case." *Park v. Dole Fresh Vegetables, Inc.*, 964 F.Supp.2d 1088, 1093 (N.D. Cal. 2013). "In order that the case 'might have been brought' in the proposed transferee district, the court there must have subject matter jurisdiction and proper venue, and the defendant must be amenable to service of process issued by that court." *Kachal, Inc. v. Menzie*, 738 F. Supp. 371, 372–73 (D. Nev. 1990). An FTCA action "may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b).

Here, there is no dispute that the complained of conduct occurred in or near Montgomery County, in Clarksville, Tennessee. (Doc. 1 ¶ 2; Doc. 6 at 1-2.) Accordingly, the Middle District of Tennessee is a district where the action might have been brought.[1]

Second, the Court must consider "whether the transferee district is a more suitable choice of venue based upon the convenience of the parties and witnesses and the interests of justice." *Airbus DS Optronics v. Nivisys LLC*, No. CV–14–02399–PHX–JAT, 2015 WL 3439143, *2 (D. Ariz. May 28, 2015); *Park*, 964 F. Supp. 2d at 1093. The Ninth Circuit Court has identified the following factors, in addition to the convenience of the parties and witnesses, that district courts may consider in determining whether a transfer is appropriate:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of

---

[1] The United States District Court for the Middle District of Tennessee, Nashville Division, "is comprised of the counties of Cannon, Cheatham, Davidson, Dickson, Houston, Humphreys, Montgomery, Robertson, Rutherford, Stewart, Sumner, Trousdale, Williamson, and Wilson." *United States District Court for the Middle District of Tennessee*, *Divisions of Court*, http://www.tnmd.uscourts.gov/divisions_of_court (last visited Dec. 4, 2015).

unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000). No single factor is dispositive, and a district court has broad discretion to adjudicate motions for transfer on a case-by-case basis. *Stewart Org, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) ("A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors."); *Sparling v. Hoffman Constr. Co., Inc.*, 864 F.2d 635, 639 (9th Cir. 1988). The party seeking a change of venue bears the burden of establishing such action is proper. *Commodity Futures Trading Comm'n v. Savage*, 611 F. 2d 270, 279 (9th Cir. 1979).

### III. Discussion

Defendant argues that transferring this case to the United States District Court for the Middle District of Tennessee is appropriate because the action could have been brought there, and based on several different factors, it is the better venue for this case. (Doc. 6.) Plaintiff does not dispute that this action could have been brought in the Middle District of Tennessee. Rather, Plaintiff contends that transfer of this matter will cause him hardship and give Defendant an unfair advantage. (Doc. 10.) Below, the Court addresses the relevant factors and the parties' arguments.

#### a. Convenience of the Parties

This factor weighs slightly against transferring this case. If this case is transferred to the Middle District of Tennessee, Plaintiff will need to travel there for any trial in this matter. Defendant contends that if Plaintiff chooses to conduct depositions of witnesses in person, he will likely need to travel to Tennessee for those depositions regardless of whether the case is transferred because most, if not all, of the witnesses, other than Plaintiff, reside in or near Tennessee. The Court finds that it would be more convenient for Plaintiff if this case were tried in Arizona because he currently resides here. Defendant has counsel available in both Arizona and Tennessee, so it would not be inconvenient for Defendant if the case is tried here or in the Middle District of Tennessee.

Plaintiff argues in his Response that transferring this case would cause him "undue

hardship." (Doc. 10.) However, Plaintiff fails to provide any basis for this contention. The Court notes that although it will be less convenient for Plaintiff to travel to Tennessee, the possibility of taking telephonic or video depositions of witnesses may ease the burden on Plaintiff. And, as Defendant notes, even if Plaintiff were to take depositions in person, he would likely have to travel to Tennessee to do so regardless of whether the case is transferred because non-party witnesses in or near Tennessee cannot be forced to travel to Arizona. *See* Fed. R. Civ. P. 45(c)(1) ("A subpoena may command a person to attend a trial, hearing, or deposition only . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person; or . . . within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense.")[2]

### b. Convenience of Witnesses

This factor weighs heavily in favor of transferring this case. "'In determining the convenience of the witnesses, a court should consider not only the number of witnesses located in the respective venues, but also the nature and quality of their testimony.'" *Federal Trade Commission v. Wyndham World Wide Corp.*, No. CV-12–1365–PHX–PGR, 2013 WL 1222491, at *4 (D. Ariz. March 25, 2013) (quoting *Sloan v. Pfizer*, Inc., Case No. C-08-1849-SBA, 2008 U.S. Dist. LEXIS 78785, 2008 WL 4167083, at *5 (N.D. Cal. Sept. 8, 2008)).

There appears to be no dispute that all of the witnesses to the incident reside within 100 miles of the United States District Court for the Middle District of Tennessee in Nashville, Tennessee. Defendant has provided Declarations to support its claim that

---

[2] Plaintiff also argues that transferring this case to the Middle District of Tennessee will give Defendant an unfair advantage in the litigation. (Doc. 10.) In support of this argument, Plaintiff cites to a November 2010 "United States Attorneys' Bulletin" regarding litigating the venue in federal tort claim cases, which Plaintiff claims provides that "requesting a change in venue is a tactical move and US Attorneys are advised to request change of venue if it could significantly affect the outcome of the case in favor of Defendant." (*Id.*) The Court does not find this argument supported or persuasive. Plaintiff fails to provide any basis for his contention that transferring this specific case to another United States District Court will result in an unfair advantage to Defendant, particularly because, as detailed below, regardless of the venue, the parties agree that Tennessee law applies to Plaintiff's claims.

witnesses in this case reside and/or work in Tennessee or just across its border at Fort Campbell in Kentucky, including Ms. Rogers, Mr. Gaither, Detectives Eric Ewing and Tyler Barrett of the Clarksville, Tennessee Police Department, who investigated the incident, medical professionals who treated Eldin Rogers, and other members of the United States Army stationed at Fort Campbell, Kentucky. (Doc. 6 at 4-5; Doc. 6-1; Doc. 6-2; Doc. 6-3.) Plaintiff contends in his Response that "Defendant admits the factual aspects of the incident," "[n]egating the need for witness testimony in that regard." (Doc. 10 at 1.) Although Defendant admits that Eldin Rogers was injured at the time and location identified in the Complaint, Defendant disputes at least some of the factual allegations in Plaintiff's Complaint regarding the events that occurred, including whether Sergeant Orazi was acting within the course and scope of his employment. (Doc. 7 at 4-5.) The witnesses who can testify to the factual allegations in this case all reside in or near the Middle District of Tennessee. And, as Defendant points out, at least some of the witnesses who can testify to matters related to alleged damages, including medical personnel and Ms. Rogers, are located in or near Tennessee. Plaintiff fails to identify any witness who is located in Arizona, other than himself.

Because the non-party witnesses residing in Tennessee and Kentucky are outside the compulsory power of this District Court, if the case were to stay in Arizona, all of these witnesses, assuming they would appear at trial, would need to voluntarily travel across the country to testify. Defendant also contends that all of the relevant documents in the case are located in or near Clarksville, Tennessee. Plaintiff does not dispute this contention. Accordingly, this factor weighs heavily in favor of transfer. *See Gomez v. Wells Fargo Bank, NA*, No. CV-09-00181-PHX-GMS, 2009 WL 1936790, at *2 (D. Ariz. July 2, 2009) ("The convenience of witnesses is said to be the most important factor in passing on a transfer motion.") (quoting *Los Angeles Mem'l Coliseum Com'n v. Nat'l Football League*, 89 F.R.D. 497, 501 (C.D. Cal. 1981)). Further, this factor outweighs the convenience of the parties. *See Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 780 (N.D. Cal. 2014) ("The convenience of non-party witnesses is the most important convenience factor; more important than the convenience of party witnesses"); *Shalaby v.*

*Newell Rubbermaid, Inc.*, No. C06-07026 MJJ, 2007 WL 3144357, at *6 (N.D. Cal. Oct. 24, 2007) (quoting *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1160 (S.D. Cal. 2005)) ("[W]hile the convenience of party witnesses is a factor to be considered, the convenience of non-party witnesses is the more important factor.").

### c. Location of Relevant Agreements

The parties have not identified any agreements at issue in or relevant to this case. Therefore, this factor does not weigh in favor of or against transferring this case.

### d. The State That is Most Familiar With the Governing Law

Both parties assert that Tennessee law applies to this case. (Doc. 1 ¶ 3; Doc. 6 at 6.) More specifically, Plaintiff alleges tort claims against the United States pursuant to the FTCA, 28 U.S.C. § 2671, *et seq.*, for injuries caused within a government employee's scope of employment. "The law applicable to determine whether a government employee was acting within the scope of employment is 'the law of the place where the act or omission occurred.'" *Kasin v. Kent*, 457 F.3d 1033, 1037 (9th Cir. 2006). Further, Tennessee law will govern Defendant's liability for the tort claims alleged in this action. *Tekle v. United States*, 511 F.3d 839, 844 (9th Cir. 2006); (Doc. 1 ¶¶ 34, 43). The United States District Court for the Middle District of Tennessee would be more familiar with Tennessee law, which governs Plaintiff's claims here, than this Court. Accordingly, this factor weighs in favor of transferring this case.

### e. Plaintiff's Choice of Forum

This factor weighs slightly against transferring this case. Generally, a plaintiff's choice of forum is entitled to substantial consideration. "However, 'the degree to which courts defer to the plaintiff's chosen venue is substantially reduced when the plaintiff's choice is not its residence or where the forum lacks a significant connection to the activities alleged in the complaint.'" *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1100 (N.D. Cal. 2006) (quoting *Carolina Cas. Co. v. Data Broadcasting Corp.*, 158 F. Supp. 2d 1044, 1048 (N.D. Cal. 2001) (emphasis added)); *see also Park*, 964 F. Supp. 2d at 1094. Here, the only connection to Arizona is that it is the state where Plaintiff resides. None of the acts complained of in Plaintiff's Complaint took place in

Arizona. Therefore, this factor weighs only slightly against transfer of this case.

### f. The Parties' Contacts With the Forum

This factor weighs slightly in favor of transferring this case. Defendant has contacts with the District of Arizona, and Plaintiff resides in Arizona. However, the specific military personnel related to this action are located in or near Tennessee. Defendant further contends that Plaintiff previously lived in Tennessee with his wife and child and has traveled to Tennessee on at least one occasion subsequent to the events at issue in this case. Plaintiff does not dispute these contentions in his Response, and asserts in his prayer for relief that he has traveled to Tennessee since the incident occurred. (Doc. 1 ¶ 50; Doc. 6 at 7-8, Doc. 10.) Therefore, this factor weighs slightly in favor of transferring this case.

### g. The Contacts Relating to Plaintiff's Cause of Action In the Chosen Forum

This factor weighs in favor of transferring this case. There is no dispute that all of the incidents giving rise to this litigation occurred in or near the Middle District of Tennessee. (Doc. 1 at 2-5; Doc. 6 at 8.)

### h. The Costs of Litigation

This factor does not weigh in favor of or against transferring this case. "Generally, litigation costs are reduced when venue is located near most of the witnesses expected to testify or give depositions," and "[a]lthough developments in electronic conveyance have reduced the cost of document transfer somewhat, the cost of litigation will be substantially lessened if the action is venued in the same district where most of the documentary evidence is found." *See Gomez*, 2009 WL 1936790, at \*3. Courts also consider the financial impact of transfer on the parties in analyzing this factor. *See Koval v. United States*, No. 2:13–cv–1630–HRH, 2013 WL 6385595, at \*3 (D. Ariz. Dec. 6, 2013); *Airbus DS Optronics GmbH*, 2015 WL 3439143, at \*5.

The Defendant argues that it would be more costly to litigate this matter in Arizona because all of the witnesses, other than Plaintiff, and the documents reside in the Middle District of Tennessee or within 100 miles of the courthouse. (Doc. 6 at 8.)

Defendant further argues that even if the case remains in Arizona, Plaintiff would need to travel to the Middle District of Tennessee to take depositions and, therefore, the costs for him would be about the same regardless. (*Id.*) Plaintiff contends that the evidence in this case will come from documents and written reports, and "it is common place to conduct depositions telephonically." (Doc. 10 at 1.) If this case were tried in the Middle District of Tennessee, Plaintiff would presumably need to incur additional costs to travel there for trial. Defendant is likely in a better position to bear any additional financial costs of litigating this case in Arizona, than Plaintiff is to bear additional travel costs if this case were tried in the Middle District of Tennessee. Balancing the costs associated with travel for witnesses and Plaintiff, the Court finds this factor is neutral, and does not weigh in favor of or against transfer of this case.

### i. The Availability of Compulsory Process

This factor weighs in favor of transferring this case. If the case were to remain in this District, several of the witnesses located in or near the Middle District of Tennessee would be beyond the subpoena power of this Court. *See Koval*, WL 6385595, at *4 (noting non-party witnesses were outside of the court's 100-mile limit for compelling attendance of witnesses) (citing Fed. R. Civ. P. 45(c)(1)(A)). Defendant contends that although it can generally compel attendance at trial by its employees, Ms. Rogers, a witness to the events, is scheduled to be discharged from the Army and will no longer be within Defendant's control. (Doc. 6 at 9.) As stated above, Defendant also contends that other witnesses who will testify are located within the subpoena power of the Middle District of Tennessee, including health care professionals who treated Eldin and members of the local law enforcement who investigated in the incident. Plaintiff does not dispute these contentions. Witnesses may testify through the use of deposition or video testimony; however, here, it appears that several likely witnesses are outside the subpoena power of this Court. *See F.T.C. v. Wright*, No. 2:13-CV-2215-HRH, 2014 WL 1385111, at *4 (D. Ariz. Apr. 9, 2014) ("there are several likely witnesses who reside in Utah. These individuals are outside the subpoena power of this court and thus this factor 'weigh[s] strongly in favor of transfer.'") (quoting *U-Haul Int'l, Inc. v. Hire A Helper,*

*LLC*, No. CV-08-1271-PHX-DGC, 2008 WL 4368663, at *3) (D. Ariz. Sept. 23, 2008); s*ee also Leyvas v. Bezy*, Case No. CV 07–1032–PHX–SMM, 2008 WL 2026276, at *4 (D. Ariz. May 9, 2008)) ("the inability of the Court to compel the attendance of certain witnesses would certainly favor transferring the case")). Accordingly, this factor weighs in favor of transferring this case.

### j. The Ease of Access to Sources of Proof

This factor weighs in favor of transfer. There is no dispute that the almost all of the witnesses and documents relevant to this case are all located in or near the Middle District of Tennessee, and all of the complained of conduct took place there. *See Patent Mgmt. Found., LLC v. Analog Devices, Inc.*, No. C 10-03630 SBA, 2011 WL 197831, at *4 (N.D. Cal. Jan. 20, 2011) (transferring case where virtually all of the third-party witnesses and documents are located in the transferee district); *Hunter v. Mozil*, No. C 08-4213 PJH, 2008 WL 5130453, at *5 (N.D. Cal. Dec. 5, 2008) (transferring case to Texas where other than plaintiff and possibly one other witness, "any witnesses [were] likely to be located in Texas, as [was] the physical and documentary evidence.").

### k. Localized Interest

Finally, Defendant contends that transfer of this case is also appropriate because Tennessee has a localized interest in having this case decided in the Middle District of Tennessee. Plaintiff does not address this argument. (Doc. 6 at 10-11.) At least some courts have also considered localized interests in ruling on a motion to transfer. *See Koval*, 2013 WL 6385595, at *2 (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)). The Court finds that Tennessee has some local interest in litigation involving local law enforcement and employees at a military base near Tennessee. However, the military base in question is a federal military base. Therefore, the Court finds this factor weighs only slightly in favor of transfer.

### l. Conclusion

Balancing the above factors, the Court concludes that transferring this case to the Middle District of Tennessee is appropriate. There is no dispute that all of the complained of conduct occurred in or near that District. Likewise, most, if not all, of the

witnesses, other than Plaintiff, and the documentation relevant to the incidents alleged in the Complaint are located in or near the same location.  Although Plaintiff's choice of forum should be given deference, in light of the location of the witnesses and relevant documents, the applicability of Tennessee law to Plaintiff's claims, the limits on the compulsory power of this Court, and the local interest in litigating this case in Tennessee, the Court will grant Defendant's Motion to Transfer this case to the United States District Court for the Middle District of Tennessee in Nashville, Tennessee.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Transfer (Doc. 6) is granted.

Dated this 10th day of December, 2015.

Honorable John Z. Boyle
United States Magistrate Judge